# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

     Plaintiff,

v.

MITCHELL TIMM,

     Defendant.

Case No. 13-CR-236-JPS

**ORDER**

**1.  BACKGROUND**

On May 22, 2020, Defendant filed a motion asking the Court to release him from incarceration, either to home confinement or a halfway house. (Docket #45). The Government filed a response, (Docket #49), and Defendant did not reply. The Court has reviewed these submissions and will deny Defendant's motion.

**2.  FACTS**

In 2012, Defendant was involved in a series of armed robberies which involved banks, storage units, and vehicles. (Docket #28 at 4–7). During these robberies, Defendant and his codefendant brandished firearms and stole significant amounts of money and property. (*Id.*) Defendant was eventually arrested and pleaded guilty to armed robbery and brandishing a firearm in relation to a crime of violence. (Docket #32 at 1). This Court sentenced Defendant to a total of 114 months' imprisonment, to be followed by a 5-year term of supervised release. (*Id.* at 2–4). Defendant was also ordered to pay $49,706.00 in restitution. (*Id.* at 6).

Defendant is a 30-year-old male. (Docket #28 at 2). Based on the presentence investigation report, Defendant was diagnosed with a mild

liver condition for which he has been advised not to consume alcohol. (*Id.* at 30–31). Besides a short history of urinary tract infections in his youth, Defendant reports no other medical issues. (*Id.*) He is currently detained at Federal Correctional Institution Pekin ("FCI Pekin") in Pekin, Illinois. As of April 15, 2021, FCI Pekin reports that zero inmates and twelve staff members have active cases of COVID-19.[1] No deaths have been reported, and 762 inmates and 72 staff have recovered from the virus.[2] Further, FCI Pekin is reporting that 122 of its staff and 355 of its inmates have been *fully* vaccinated.[3]

**3. ANALYSIS**

From his motion, Defendant appears to be asking for two forms of relief: (1) a request for compassionate release, and (2) a request for early placement in a halfway house. The Court will address each of these requests, in turn.

**3.1 Compassionate Release**

The Court can modify a term of imprisonment "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or thirty days after the warden at the defendant's facility has received such a request for release, "whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). There must also be "extraordinary and compelling reasons warrant[ing] such a reduction[.]" *Id.* § 3582(c)(1)(A)(i).

---

[1] Fed. Bureau of Prisons, *COVID-19 Coronavirus*, https://www.bop.gov/coronavirus/ (last visited Apr. 15, 2021).

[2] *Id.*

[3] *Id.*

While § 3582(c)(1)(A) instructs that a reduction must also be "consistent with applicable policy statements issued by the [United States] Sentencing Commission," this circuit recently held that the relevant policy statement, U.S.S.G. § 1B1.13, is inapplicable to prisoner-initiated motions for compassionate release. *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020). Therefore, a court has discretion when determining what constitutes an "extraordinary and compelling" reason warranting compassionate release. *Id.* ("[T]he trailing paragraph of § 3582(c)(1)(A) does not curtail a district judge's discretion. Any decision is 'consistent with' a nonexistent policy statement."). A district court may also "make the same determinations that would normally be left to the Director of the Bureau of Prisons [under the catchall provision at U.S.S.G. § 1B1.13 n.1(D)]." *United States v. Brown*, Case No. 01-CR-196-JPS, 2020 WL 4569289, at *4 (E.D. Wis. Aug. 7, 2020). Yet, this Court will evaluate prisoner-initiated motions for compassionate release with due regard for the guidance provided in § 1B1.13 because it "provide[s] a working definition of 'extraordinary and compelling reasons' . . . [which] can guide discretion without being conclusive." *Gunn*, 980 F.3d at 1180; *see also United States v. Mays*, Case No. 1:08-cr-00125-TWP-DML, 2020 WL 7239530, at *3 (S.D. Ind. Dec. 9, 2020) (evaluating compassionate motions brought under the "extraordinary and compelling" prong of § 3582(c)(1)(A) with "due regard" for § 1B1.13).

The commentary to the Sentencing Guidelines explains that "extraordinary and compelling reasons exist" when "[t]he defendant is suffering from a terminal illness, (i.e., a serious and advanced illness with an end of life trajectory)," such as cancer or advanced dementia. U.S.S.G. § 1B1.13 n.1.(A)(i). The commentary also considers a defendant's medical condition to be an extraordinary and compelling reason if:

> [t]he defendant is suffering from a serious physical or mental condition, suffering from a serious functional or cognitive impairment, or experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

*Id.* § 1B1.13 n.1.(A)(ii).

The Court will also consider whether "the defendant is not a danger" to others or the community, as provided in 18 U.S.C. § 3142(g). *Id.* § 1B1.13(B)(2).

Prior to modifying a term of imprisonment, the Court must also consider the sentencing factors set forth in 18 U.S.C. § 3553(a), if applicable. 18 U.S.C. § 3582(c)(1)(A). Pursuant to § 3553(a), when determining the sentence to be imposed, the Court shall consider, among other things: the nature and circumstances of the offense; the defendant's history and characteristics; and the need for the sentence to (1) reflect the seriousness of the offense, promote respect for the law, and provide just punishment, (2) afford adequate deterrence, (3) protect the public, and (4) provide the defendant with effective training, care, and/or treatment.

In the present case, the Government first challenges whether Defendant has exhausted his administrative remedies. (Docket #49 at 6); *see Gunn*, 980 F.3d at 1179 ("Failure to exhaust administrative remedies is an affirmative defense, not a jurisdictional issue that the court must reach even if the litigants elect not to raise it.") (internal citations omitted). As the Government notes, from the record before the Court, there is no evidence that Defendant has made any effort to bring his request to the Bureau of Prisons ("BOP"). However, even assuming Defendant had exhausted his

administrative remedies, he has not presented an extraordinary and compelling reason warranting his release.

The outbreak of COVID-19, together with a defendant's underlying medical conditions that place the defendant at "high risk" should he contract the disease, may establish an extraordinary and compelling reason warranting release. *See, e.g.*, *United States v. Gonzales*, Case No. 13-CR-101-JPS, 2020 WL 4437154, at *4 (E.D. Wis. Aug. 3, 2020). But, with regard to COVID-19, "reliance on circumstances applicable to everyone in prison would appear to read the term 'extraordinary' out of the statute." *United States v. Scott*, 461 F. Supp. 3d 851, 863 (E.D. Wis. 2020). "[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). Defendant has not alleged that he suffers from any underlying conditions that put him at higher risk if he were to contract COVID-19.

The Court recognizes that Defendant's family is undergoing hardship as a result of Defendant's incarceration during a pandemic. Specifically, his wife is now serving the role of a "single mother" who is in need of childcare while she works full time as a nurse during a global health crisis. (Docket #45 at 1; #50). But courts have found that the burden placed on a defendant's family by the defendant's incarceration is not a reason to justify release. *See, e.g.*, *United States v. Nazer*, 458 F. Supp. 3d 967, 973 (N.D. Ill. 2020) (holding that a defendant's spouse's inability to watch and homeschool their kids due to her job in healthcare during the COVID-19 pandemic did not constitute an extraordinary or compelling circumstance as would warrant a reduction of his sentence); *United States v. Schnabel*, No. 2:17-CR-169, 2020 WL 3566613, at *4 (S.D. Ohio July 1, 2020) ("[T]he

incarceration of many inmates poses a hardship to their families. The defendant's family circumstances are not extraordinary."). The hardships put on Defendant's family by his incarceration do not constitute an extraordinary and compelling reason.[4]

### 3.2 Early Placement in a Halfway House

The BOP has not yet determined what portion of Defendant's final 12 months in prison may be served in a halfway house. Defendant seems to be asking for the Court to issue a recommendation that he be immediately placed in a halfway house. (Docket #45 at 2). Defendant points to his lack of disciplinary issues in the past five years, his job within the BOP facility, and his completion of many programs and classes as evidence of his reformation and rehabilitation while incarcerated. (*Id.*) He claims he is no longer "the stupid kid [he] was back then" and that he would like to be given the opportunity to support his family from a halfway house. (*Id.*)

The Court's authority to issue such a post-sentencing recommendation is uncertain. Congress has directed the BOP to consider various factors in making inmate-placement decisions, including "any statement by the court that imposed the sentence . . . recommending a type of penal or correctional facility as appropriate." 18 U.S.C. § 3621(b)(4)(B). While it is relatively common for the sentencing judges to make recommendations about placement *at the time of sentencing*, it is unresolved

---

[4]The commentary to U.S.S.G. § 1B1.13 provides two situations in which "family circumstances" may constitute extraordinary and compelling reasons: (1) "[t]he death or incapacitation of the caregiver of the defendant's minor child or minor children;" and (2) "[t]he incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." Neither of these situations are presently applicable.

in this circuit whether *post-sentencing* recommendations by district judges are permitted.

It would seem that, "[i]n the absence of special circumstances, most courts 'decline[ ] . . . to independently recommend such a placement, finding the BOP better suited to make decisions based on inmates' records and [halfway house] availability.'" *Akina v. United States*, No. 16-CR-2009-KWR, 2020 WL 6342776, at *2 (D.N.M. Oct. 29, 2020) (quoting *United States v. Britton*, No. 09-CR-362 (ENV), 2020 WL 6146861, at *1 (E.D.N.Y. Oct. 16, 2020)); *see e.g.*, *United States v. Brooks*, No. 3:97-CR-003-TBR, 2019 WL 118593, at *1 (W.D. Ky. Jan. 7, 2019) ("the BOP has the most complete and accurate information in considering end of sentence determinations, and it ultimately has authority over [the defendant's] placement, date of release, and/or any pre-release."); *United States v. Taylor*, No. CR-08-210-F, 2020 WL 3605026, at *2 (W.D. Okla. July 2, 2020) ("the BOP is in the best position to evaluate halfway house or RRC placement, including the length of time defendant should serve in a halfway house or RRC.").

"Other courts have acknowledged that while they cannot amend or modify the judgment, they may nevertheless issue a recommendation separate and apart from the judgment." *United States v. Ross*, No. 95-CR-114, 2018 WL 2376510, at *2 (E.D. Wis. May 24, 2018) (collecting cases). Such recommendations are nonbinding. *Id.* In 2018, a court in this district adopted this approach: "while the court may not modify the original judgment or otherwise order the BOP to grant pre-release time in response to a defendant's post-sentencing motion, it may issue a non-binding recommendation." *Id.* at *3. In that case, the judge nevertheless declined to issue a recommendation because the defendant "was sentenced decades ago, by a judge now deceased," and the judge felt she could "offer no

greater insight than anyone else reviewing the court's record . . . [and] the BOP is better positioned to determine the amount of such time." *Id.*

The Court will also decline to issue such a recommendation. To begin, the Court still has doubts as to whether it is appropriate for the Court to issue such a recommendation. But even if the Court could make such a recommendation, Defendant was originally sentenced by this Court in 2014. (Docket #32). As Defendant notes, a lot has changed since the Court's last involvement in this case. The BOP is in a much better position to know the circumstances and happenings of the last seven years of Defendant's incarceration. Accordingly, the Court will deny Defendant's request and leave the decision as to when he should be sent to a halfway house to the BOP.

4. **CONCLUSION**

Defendant has neither exhausted his administrative remedies nor proffered an extraordinary and compelling reason warranting his release. Further, because the BOP is in a better position than the Court to decide when Defendant should be sent to halfway house, the Court will not issue a recommendation as to the same. Therefore, the Court will deny Defendant's motion, (Docket #45).

Accordingly,

**IT IS ORDERED** that Defendant's motion for early release or placement (Docket #45) be and the same is hereby **DENIED**.

Dated at Milwaukee, Wisconsin, this 16th day of April, 2021.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge